UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEANDRE FURLOUGH,<br>Plaintiff,<br>v.<br>CAPSTONE LOGISTICS, LLC, et al.,<br>Defendants. | Case No. 18-cv-02990-SVK<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 43, 46 |

Plaintiff DeAndre Furlough, a former employee of Defendants Capstone Logistics, LLC and Pinnacle Workforce Logistics, LLC, sues Defendants on individual and putative class action bases for engaging in various wage and hour violations under the California Labor Code and the applicable Industrial Wage Commission ("IWC") Wage Order. ECF 1 (Complaint). After removing the action from Santa Clara County Superior Court to this Court, Defendants moved to compel individual arbitration of Plaintiff's claims pursuant to an arbitration agreement contained in materials that Defendants contend Plaintiff received and acknowledged during the hiring process. ECF 23. On September 24, 2018, the Court denied the motion to compel arbitration, holding that there were issues of fact concerning whether an arbitration agreement exists and setting a jury trial on that issue. ECF 32 (the "September 24 Order"). All parties have consented to the jurisdiction of a magistrate judge. ECF 10, 13.

After conducting discovery on the issue of whether an arbitration agreement exists, both sides have now moved for summary judgment on that issue. ECF 43, 46. The Court held a hearing on April 30, 2019. Based on a careful review of the parties' submissions, arguments at the hearing, the case file, and relevant law, and for the reasons discussed below, the Court finds that an arbitration agreement exists and therefore DENIES Plaintiff's motion for summary judgment and GRANTS Defendants' motion for summary judgment. As also discussed below, the Court

will hold a status conference on June 11, 2019 to discuss what issues remain in the case and how to proceed in light of this ruling.

## I. FACTUAL BACKGROUND

### A. Plaintiff's employment application and offer

Plaintiff was employed by Capstone as a freight handler from approximately September 14, 2017 to December 20, 2017. ECF 1 (Complaint) at ¶ 5. Plaintiff had previously been employed by Capstone for several months in 2015. *Id.*

At the time Plaintiff applied for employment with Capstone in 2017, Capstone used Recruiting Management ("RM"), a paperless web-based system developed by ADP for tracking employment applicants and onboarding new employees. ECF 44 (Declaration of Gene Weiland ("Weiland Decl.")) at ¶ 4. In support of their motion for summary judgment, Defendants provided a printed log of Plaintiff's interactions with RM. *See* ECF 44-1 (the "RM Log"); ECF 44 at ¶¶ 17-18.

The RM Log shows the following activity with respect to Plaintiff's application for employment. On September 7, 2017, Plaintiff created an RM user profile, which included a user name and password. RM Log at CAPSTONE-FURLOUGH000281 (9/7/17 2:01 entry); Weiland Decl. ¶ 19. On the same date, Plaintiff completed an employment application for a freight handler position on RM. RM Log at CAPSTONE-FURLOUGH000279-281; Weiland Decl. at ¶¶ 20-21. On September 11, 2017, Capstone extended Plaintiff a conditional offer of employment as a freight handler with a tentative start date of September 15, 2017. RM Log at CAPSTONE-FURLOUGH000278 (1:25 p.m. entry); Weiland Decl. at ¶ 22.

Plaintiff does not dispute that he applied for a freight handler position through RM, or that he received an offer of employment through RM. ECF 46 at 8.

### B. Completion of onboarding form

On September 13, 2017, Plaintiff logged into RM using his user name and password and provided an electronic signature to accept his offer of employment. RM Log at CAPSTONE_FURLOUGH000278 (9/13/17 5:10 p.m. and 5:11 p.m. entries); Weiland Decl. at ¶¶ 24-25.

2

United States District Court
Northern District of California

RM then generated an email to Plaintiff using the "OF – Hourly Rate Accepted" template." RM Log at CAPSTONE_FURLOUGH000278 (9/13/17 5:12 p.m. entry); Weiland Decl. at ¶ 27. The email stated: "Congratulations on accepting the position of Freight Handler – Req. 83. Please use the following link to complete your New Hire Paper Work, Section 1 of Ei9, and your Tax Forms: **Please click here.**" Weiland Decl. ¶ 27; *see also* ECF 23-8.

Plaintiff viewed the email at 5:28 p.m. on September 13, 2017. RM Log at CAPSTONE_FURLOUGH000278 (9/13/17 5:28 p.m. entry); Weiland Decl. ¶ 28. He then clicked on the link in the email at 5:29 p.m. RM Log at CAPSTONE_FURLOUGH000278 (9/13/17 5:29 p.m. entry); Weiland Decl. ¶ 29. Plaintiff completed his tax forms the same day at 5:30 p.m. RM Log at CAPSTONE_FURLOUGH000278 (9/13/17 5:30 p.m. entry); Weiland Decl. ¶ 31.[1] Plaintiff does not dispute that he completed his tax forms on RM. ECF 46 at 8.

The RM log shows that at 5:30 p.m. on September 13, 2017, following completion of his tax forms, Plaintiff proceeded to the "onboarding_eform." RM Log at CAPSTONE-FURLOUGH000277 (9/13/17 5:30 p.m. entry); Weiland Decl. ¶ 31. Defendants have presented evidence that the "onboarding_eform" required Plaintiff to complete a series of steps in sequence before advancing to the next step, and that Plaintiff: (1) completed his personal information, including date of birth; (2) completed his payroll election by selecting "pay card" from a drop-down menu; (3) identified his emergency contacts by inputting his mother's name and telephone number; (4) acknowledged that he had read the Arbitration Agreement and the Loss Prevention Acknowledgment; (5) completed the Associate Handbook Acknowledgement and Statement of Receipt; (6) completed the job description acknowledgment; and (7) provided an electronic signature. Weiland Decl. ¶¶ 32-34; ECF 44-4 (screen prints of Plaintiff's onboarding_eform). A forensic evaluation of Plaintiff's cell phone conducted by a neutral expert found evidence that

---

[1] The RM Log shows that Plaintiff started his tax forms in symmetry on September 13, 2017 at 5:11 p.m., before he viewed the email with the link to the new hire materials. RM Log at CAPSTONE-FURLOUGH000278 (9/13/17 5:11 p.m. entry). The log shows that after he clicked on the link in the email, he was routed to symmetry where he resumed his tax forms. RM Log at CAPSTONE-FURLOUGH000278 (9/13/17 5:29 p.m. entry). Capstone's Rule 30(b)(6) witness, Mr. Weiland, explained at deposition that Plaintiff was first given access to the tax forms when he accepted the offer at 5:11 p.m. ECF 45-2 at 53-57.

3

Plaintiff's phone was used to connect to and log into the RM system at 5:29 p.m. on September 13, 2017. ECF 50-2.

At 6:00 p.m. on September 13, 2017, the RM Log states that Plaintiff was "Ready for I9 Section 1." RM Log at CAPSTONE-FURLOUGH000277 (9/13/17 6:00 p.m. entry). Defendants state that a candidate cannot be "Ready for I9 Section 1" without completing each step in the onboarding_eform, as described above. Weiland Decl. ¶¶ 34, 40, 43.[2]

The RM Log shows that on September 14, 2017, Plaintiff was assigned a paycard number. RM Log at CAPSTONE-FURLOUGH000277 (9/14/17 11:13 a.m. entry). His start date was updated to September 14, 2017. *Id.* Shortly thereafter, he was sent an email stating that section 1 of his I-9 form was required. *Id.* (9/14/17 11:14 a.m. entry).

The RM Log shows additional activity on the I-9 form on September 18, 2017 (RM Log at CAPSTONE-FURLOUGH000275-77), including completion of the I-9 on that date (RM Log at CAPSTONE-FURLOUGH000276 (9/17/17 9:28 a.m. entry)).

### C. Arbitration provisions in onboarding documents

As discussed above, Plaintiff acknowledged that he received and had read or would read Capstone's Associate Handbook as one step in completing the onboarding_eform on September 13, 2017. ECF 44-4 at CAPSTONE_FURLOUGH000294; Weiland Decl. at ¶¶ 32, 37. The Associate Handbook in effect on that date included a section on "Dispute Resolution" that stated that "Capstone maintains an Arbitration Program." ECF 44-6 at p. 2. The Associate Handbook contains some description of the Arbitration Program but states that "[t]he terms of the Company's Employment-At-Will and Arbitration Agreement, not this policy, control the arbitration program." *Id.*

Capstone's Employment-At-Will and Arbitration Agreement (the "Arbitration Agreement") outlines the arbitration program in more detail. *See* ECF 44-5 at ¶ 2 ("I and the

---

[2] Plaintiff points out that the note "ON – Completed" appears in the RM Log on May 21, 2018, months after Plaintiff left Capstone, but did not appear in the RM Log on September 13, 2017, the day that Defendants claim Plaintiff completed his onboarding_eform. Defendants explain that ADP, the RM vendor, did not add the "ON – Completed" status capability until November 2017, and thus it was not available at the time Plaintiff completed the onboarding process. ECF 46-4 at 82-85.

4

Company agree to utilize binding individual arbitration as the sole and exclusive means to resolve all disputes . . . .") The 1.5-page Arbitration Agreement also includes three references to "signing" the agreement. *Id.* at ¶ 1 ("By signing below, I certify that I understand that employment-at-will is the sole and entire agreement between myself and the Company concerning the duration of my employment and the circumstances under which my employment may be terminated."); ¶ 2 ("I and the Company acknowledge that by signing or refusing to sign this Agreement, I make no representation or demonstration of support or rejection of concerted activity."); ¶ 3 ("By signing this agreement, I am agreeing to waive any substantive or procedural rights that I may have to bring an action on a class or collective basis."). Despite these repeated references to "signing," the Arbitration Agreement does not include a signature block. *Id.* Plaintiff checked a box acknowledging that he had read the Arbitration Agreement as part of the onboarding_eform. ECF 44-4 at CAPSTONE-FURLOUGH000292.

### D. This litigation

On April 13, 2018, Plaintiff filed a class action complaint in Santa Clara County Superior Court, alleging violations of the California Labor Code, Business and Professions Code, and the applicable IWC Wage Order. ECF 1. Defendants removed the action to this Court. *Id.* Defendants then moved to compel arbitration of the case or, alternatively, to dismiss or stay the case as duplicative of earlier-filed actions. ECF 23. On September 24, 2018, the Court issued an order denying Defendants' motion. ECF 32. In the September 24 Order, the Court concluded that there was a factual dispute about whether an arbitration agreement exists. *Id.* at 7. The Court stated that it would hold a jury trial on the issue of formation of the agreement to arbitrate. *Id.* Because there is no dispute that if there is an agreement to arbitrate, it covers the claims made by Plaintiff in this case, "the jury trial will be limited to the issue of whether Plaintiff agreed, expressly or impliedly, to arbitrate his employment disputes with Capstone." *Id.* at 7-8. The Court declined Defendants' alternative request to dismiss or stay the case at that time, stating that it would convene a status conference following determination of the arbitration agreement issue to determine what issues remain in the case and how to proceed. *Id.* at 9.

The parties then conducted limited discovery on the issue of whether an arbitration

1  agreement exists. Now before the Court are the parties' cross-summary judgment motions on that issue. ECF 43, 46.

**II.   LEGAL STANDARD**

Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985). A genuine dispute of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. Even if summary judgment is not available on all claims in a case, a party may obtain partial summary judgment on a claim, defense, or portion thereof. Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that it believes demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A party with the burden of persuasion at trial must establish that there is no genuine issue of material fact regarding the elements of its claim. *So. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona v. SQM N. Am. Corp.,* 750 F.3d 1036, 1049 (9th Cir. 2014). However, the party opposing summary judgment must direct the court's attention to specific, triable facts. *So. Cal. Gas*, 336 F.3d at 889. "[T]he mere existence of a scintilla of evidence in support of the [nonmovant's] position" is insufficient to defeat a motion for summary judgment. *Id*. (quoting *Anderson*, 477 U.S. 242, 252 (1986)). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts … Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.* (1986) 475 US 574, 586-587 (1986).

////

**III.   DISCUSSION**

    **A.   Existence of an agreement to arbitrate**

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA") reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011) (citation omitted). Federal courts apply state law contract principles to determine whether an agreement to arbitrate was formed. *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002); 9 U.S.C. § 2. Under California law, "[p]arties are not required to arbitrate their disagreements unless they have agreed to do so." *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092-93 (9th Cir. 2014) (citing *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (U.S.), LLC,* 55 Cal. 4th 223, 236 (Cal. 2012)).

"In California, general principles of contract law determine whether the parties have entered a binding agreement to arbitrate." *Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 381 (Cal. Ct. App. 2016) (internal quotation marks and citations omitted). An essential element of a contract is the consent of the parties, or mutual assent. *Id.* (internal quotation marks and citations omitted). Consent may be express or implied. *Id.* at 383. Consent must be communicated by each party to the other, and "[m]utual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings.'" *Id.* at 381 (internal quotation marks and citations omitted).

        **1.   Plaintiff's completion of the onboarding form**

The party seeking to compel arbitration must prove by a preponderance of evidence that a valid arbitration agreement exists. *Knutzon v. Sirius XM Radio, Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). Here, as discussed above, Defendants have presented evidence that the Arbitration Agreement, as well as the Associate Handbook (which refers to the Arbitration Agreement), were part of the onboarding_eform that Plaintiff completed before beginning work at Capstone. *See* ECF 44-4; Weiland Decl. ¶ 32. Defendants' evidence shows that Plaintiff acknowledged that he had read the Arbitration Agreement by checking a box on the onboarding_eform. ECF 44-4 at FURLOUGH-CAPSTONE000292. Plaintiff also checked a box acknowledging that he had

received the Associate Handbook. *Id.* at CAPSTONE-FURLOUGH000294. In addition, Plaintiff provided an electronic signature on a screen containing this statement among others: "I hereby certify that all statements made in this application are true and correct to the best of my knowledge and belief." *Id.* at CAPSTONE-FURLOUGH000298. Defendants argue that this evidence establishes by a preponderance of evidence that Plaintiff completed the onboarding_eform.

Plaintiff challenges the evidence that he completed the onboarding_eform, including the acknowledgment and e-signature screens. *See* ECF 46 at 8-9. Specifically Plaintiff argues that the tax forms are "the last paperwork Mr. Furlough recalls completing related to his hiring process." ECF 46 at 8. However, Plaintiff does not deny that he stayed on RM after completing his tax forms on September 13, 2017 or that he completed the onboarding_eform, including acknowledging the Arbitration Agreement and the Associate Handbook, on that date. Instead, Plaintiff testified as follows at his deposition:

> Q: Do you remember – after you electronically signed this tax form, do you remember staying on the Capstone career site at that time and completing additional tasks?
>
> A: No, I do not remember.
>
> Q: Do you remember if you e-signed the tax form and then stopped doing any tasks on the career site, or do you just not have a recollection of what happened after that?
>
> A: I don't have a recollection of what happened after that.
>
> Q: So it's possible that you could have stayed on the career site and done more, or you could have gotten off the career site; is that your testimony?
>
> A: Yes.

ECF 45-1 at 62:17-63:6.

Testimony regarding failed recollection—such as "I don't recall," "I forgot," "I'm not entirely sure," and "I have no independent recollection"—falls short of satisfying the requirement that a party seeking to defeat a summary judgment motion must present evidence that would support a judgment in his favor. *Fed. Election Comm'n v. Toledano,* 317 F.3d 939, 950 (9th Cir. 2002); *see also Mercon Coffee Corp. v. Beanbag Storage Co.*, No. C-90-2961-DLJ, 1992 WL 1352743, at *3 (N.D. Cal. Oct. 15, 1992) (party's failure to remember signing an insurance application does not raise a genuine issue as to require submission to a jury). In light of Plaintiff's

8

testimony cited above, especially when viewed in the context of the other evidence in this case, Plaintiff fails to establish a genuine dispute that he completed the onboarding_eform, including acknowledging the Arbitration Agreement and Associate Handbook. Moreover, any argument that Plaintiff did not read or understand the arbitration provisions must fail. That Plaintiff "may not have read or fully comprehended" the contents of those documents does not preclude a determination that he is bound by the Arbitration Agreement. *Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C.*, No. 18-cv-00303-WHO, 2019 WL 144585, at *5 (N.D. Cal. Jan. 9, 2019) and cases cited therein.

Similarly, Plaintiff's challenges to the authenticity of the screen shots of Plaintiff's onboarding_eform and to the sufficiency of Plaintiff's e-signature fail. To authenticate evidence, the proponent must introduce "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). In determining authenticity, the Court may consider testimony of a witness with knowledge, as well as "the appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together will all the circumstances." Fed. R. Evid. 901(b)(1), (4). Moreover, California's Uniform Electronic Transaction Act provides that a "signature may not be denied legal effect or enforceability solely because it is in electronic form" or "because an electronic record was used in its formation." Cal. Civ. Code § 1633.7(a).

Here, Defendants have produced the declaration of Mr. Weiland, Capstone's Chief Information Officer. ECF 44. Mr. Weiland is a "person with knowledge," as required under Federal Rule of Evidence 901(b)(1), due to his familiarity with Capstone's RM system. *Id.* at ¶¶ 3-4. Mr. Weiland has authenticated the RM Log, the onboarding_eform screenshots, the Arbitration Agreement and Associate Handbook, and other materials concerning Plaintiff's hiring. *Id.* at ¶¶ 17-18, 55, 57. Mr. Weiland has also detailed the procedures necessary to complete the onboarding process and the particular steps of Plaintiff's hiring and onboarding. *Id.* at ¶¶ 4-59. Similar evidence has been found sufficient to prove that an employee electronically completed and signed onboarding documents that contained an arbitration agreement. *Trevino v. Acosta, Inc.*, Case No. 18-cv-06529-NC, 2018 WL 3537885, at *5-7 (N.D. Cal. July 23, 2018). Accordingly, the Court finds that Defendants have established by a preponderance of evidence that Plaintiff

completed and e-signed the onboarding_eform, including acknowledging that he read the Arbitration Agreement and received the Associate Handbook.

### 2. Sufficiency of Plaintiff's consent

Plaintiff argues that even if the Court credits Defendants' evidence concerning the onboarding_eform, Plaintiff's actions do not constitute consent to the Arbitration Agreement. *See* ECF 46 at 13-15. Plaintiff cites the language from the statement he e-signed, which certified the truthfulness of his application, and argues that "it is unreasonable to think that anyone would believe they are consenting to arbitration by certifying the truthfulness of an application," particularly where "[t]he Arbitration Agreement is not mentioned in this statement." *Id.* at 14. Similarly, Plaintiff argues that electronically checking a box acknowledging the Arbitration Agreement "is not the same as agreeing to the terms of an agreement." *Id.*

Some cases have held that e-signing or acknowledging general statements in an employment application or receipt of arbitration-related documents does not constitute an agreement to arbitrate. *See, e.g., Sparks v. Vista Del Mar Child and Family Servs.,* 207 Cal. App. 4th 1511 (Cal. Ct. App. 2012) (holding acknowledgment of receipt of handbook insufficient to establish arbitration agreement where handbook included in one of many clauses an arbitration clause that was not specifically highlighted and there was no place for employee to acknowledge arbitration clause in writing); *Mitri v. Arnel Mgmt. Co.*, 157 Cal. App. 4th 1164 (Cal. Ct. App. 2007) (holding acknowledgment of handbook containing arbitration provision insufficient to establish arbitration agreement where handbook stated that employees were required to sign arbitration agreement and would be provided a copy of their signed arbitration agreement). In other cases, however, employees have been held to have consented to arbitration by similar actions. For example, in *Davis*, the plaintiff acknowledged that she received a copy of an employee handbook containing an arbitration provision when she first began employment. 755 F.3d at 1092. The Ninth Circuit held that "[t]he handbook [the employee] received when she began work established the ground rules of her employment, including that [the employee and employer] would arbitrate certain disputes. She accepted employment on this basis, so there was a binding agreement to arbitrate." *Id.* at 1093. Similarly, in *Harris*, a California appeals court held

10

1 that the plaintiff employee had consented to arbitration by acknowledging receiving both the
2 employee handbook and the attached arbitration agreement, where the handbook stated that the
3 arbitration agreement was a prerequisite to employment and that an employee who began
4 employment would be deemed to have consented to arbitration. 248 Cal. App. 4th at 383.

As evident from the discussion of these cases, the outcome appears to turn on the specific facts of each case. Here, the uncontroverted facts are that Plaintiff acknowledged reading the Arbitration Agreement by checking a box. ECF 44-4 at CAPSTONE-FURLOUGH000292. The Arbitration Agreement is phrased in terms of an agreement, not a policy imposed by the company. *See, e.g.,* ECF 44-5 at ¶ 2 ("I and the Company agree to utilize binding arbitration as the sole and exclusive means to resolve all disputes that may arise out of be related in any way to my employment …"). Plaintiff has presented no evidence that he affirmatively rejected the Arbitration Agreement. Indeed, such a claim would be inconsistent with the position Plaintiff has taken in this case, which is that he does not recall seeing the Arbitration Agreement. *See* Section III.A.1., *supra* The Arbitration Agreement is contained in a document separate from the Associate Handbook, of which Plaintiff also acknowledged receipt. ECF 44-4 at CAPSTONE-FURLOUGH000294. The handbook acknowledgment included statements that acknowledged that the handbook "outlines the policies, procedures, benefits and Associates' responsibilities at Capstone Logistics" and that Plaintiff "have or will read the provisions contained in the Handbook." *Id.* The handbook itself describes arbitration program and refers to the separate Arbitration Agreement. ECF 44-6 at p. 2. As part of the same onboarding_eform that contained the acknowledgments of the Arbitration Agreement and Associate Handbook, Plaintiff provided an e-signature concerning the correctness of his application. *Id.* at CAPSTONE-FURLOUGH000296. The facts and circumstances of this case lead the Court to conclude that Plaintiff's check box acknowledgments and his e-signature constitute his consent to the Arbitration Agreement.

Plaintiff offers several additional arguments why the Court should conclude that he did not consent to arbitration. First, Plaintiff emphasizes that the Arbitration Agreement contains express references to "signing" and there is no evidence of a signed Arbitration Agreement. *See* ECF 46 at

11

16. Second, Plaintiff argues that he should not be found to have consented to arbitration because the Arbitration Agreement did not contain express language that by continuing employment, the employee was automatically bound to the terms of an arbitration agreement. *See id.* at 16-17. However, the authorities cited by Plaintiff in support of these arguments are distinguishable in that they did not involve employees who had expressly consented to arbitration. *See, e.g., Bayer v. Neiman Marcus Holdings, Inc.*, 582 Fed. App'x 711, 713 (9th Cir. 2014) (holding that employee who had refused to sign arbitration agreement did not impliedly consent to arbitration); *Gorlach v. Sports Club Co.,* 209 Cal. App. 4th 1497, 1509-11 (2012) (rejecting argument that non-signing employee had impliedly consented to arbitration by continuing employment after learning that signing an arbitration agreement was a condition of employment); *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 422 (Cal. Ct. App. 2000) (holding that non-signing employee's consent to arbitration could be implied by her continued employment); *Mitri*, 157 Cal. App. 4th at 1167 (finding non-signing employee had not consented to arbitrate where arbitration policy stated employees would be required to sign). The cases cited by Plaintiff arose in a different context and do not change the Court's conclusion that, consistent with the holdings in *Davis* and *Harris*, here uncontroverted evidence demonstrates that Plaintiff expressly agreed to arbitration by acknowledging receipt of the Arbitration Agreement and employee handbook and by electronically signing the onboarding_eform.

Accordingly, the Court finds that Plaintiff consented to arbitration and thus an arbitration agreement exists.

**B.  FAA exemption for transportation workers**

Plaintiff argues that even if the Court finds that an agreement to arbitrate exists, he falls within an exemption to the FAA for transportation workers. ECF 46 at 18-20. Plaintiff contends that the Arbitration Agreement must therefore be evaluated under California law, especially as it relates to class action waivers. Defendants argue that Plaintiff waived his FAA exemption argument by failing to raise it in opposition to Defendants' original motion to compel arbitration and, in any event, Plaintiff does not qualify for the exemption. ECF 50 at 19-22.

The Court rejects Defendants' argument that Plaintiff has waived the argument that he is

1 exempt from the FAA. The issue of whether to compel arbitration is still before this Court, and therefore the Court will not conclude that Plaintiff was required to raise this argument in opposition to the original motion to compel arbitration.

Turning to whether Plaintiff falls within the transportation worker exemption of the FAA, that exemption encompasses all "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The Supreme Court has interpreted the phrase "any other class of workers engaged in foreign or interstate commerce" in this exemption to apply only to "transportation workers." *Circuit City Stores Inc v. Adams*, 532 U.S. 105, 119 (2001). It noted that "transportation workers" could be defined as "those workers actually engaged in the movement of goods in interstate commerce." *Id.* at 112 (internal quotation marks and citations omitted). In *Veliz v. Cintas Corp.*, No. C 03-1180 SBA, 2004 WL 2452851 (N.D. Cal. Apr. 5, 2004), a court in this District analyzed the characteristics that make a worker a "transportation worker." After conducting a thorough review of the legislative history and case law concerning the transportation worker exception, the *Veliz* court summarized the "general trend amongst the circuits" as follows: plaintiffs who are personally responsible for transporting goods in interstate commerce, no matter what industry they are in, are transportation workers under the FAA exemption. *Id.* at *7. Plaintiffs who oversee the transportation of goods in the transportation industry are also transportation workers. *Id.* However, "[p]laintiffs who both (1) are not directly transporting goods; and (2) are not in the transportation industry itself, are not exempt." *Id.*

The Arbitration Agreement upon which Defendants rely directly states that Capstone's "business involves interstate commerce." ECF 44-5 at ¶ 2. Plaintiff argues that his job duties included "loading, unloading, and handling freight; communicating with drivers[;] and monitoring conditions on the docks." ECF 46 at 19. However, Plaintiff admits that he is not a driver directly engaged in interstate deliveries of goods. Nor has Plaintiff demonstrated that Defendants are themselves in the transportation industry. Plaintiff cites a statement from Capstone's web site stating that "[d]istribution centers are traditionally under pressure to lower costs while getting the right products delivered damage-free and on time." ECF 53 at 8 n.1. This statement is not

13

sufficient to establish that Defendants are transportation companies. Instead, the evidence indicates that Defendants are involved in warehouse logistics, not transportation.

Accordingly, because Plaintiff did not directly transport goods while at Capstone and he has not shown that Capstone is in the transportation industry itself, Plaintiff is not a transportation worker falling within an exemption from the FAA.

## IV. CONCLUSION

Defendants have established that there is no genuine dispute of material fact concerning the existence of an arbitration agreement. Accordingly, the Court GRANTS Defendants' motion for summary judgment that an arbitration agreement exists and DENIES Plaintiff's cross-motion for summary judgment on that issue.

On June 11, 2019 at 10:00 a.m., the Court will hold a status conference to determine what issues remain in this case in light of the finding that there is an arbitration agreement, as well as how to proceed on the remaining issues. The parties are ordered to file a joint statement, not to exceed five pages, setting forth their views on these issues no later than June 4, 2019.

**SO ORDERED.**

Dated: May 10, 2019

SUSAN VAN KEULEN
United States Magistrate Judge

14